## No. 2624.

CRESCENT CITY BANK *v.* JOSEPH HERNANDEZ.

Where a power of attorney is given to an agent " to make checks and draw money out of any bank or banks wherein the same may have been deposited in the name or for account of the principal," the fact that a sufficient amount to meet the check was not deposited when the check was drawn is not a valid defense, and does not authorize the principal to refuse paying it in the hands of a party who had no notice of the prohibition put upon the agent.

Where A gives an accommodation check to B in exchange for B's check, the fact that B's check is not paid, does not release A from the liabilities attaching to his own check as soon as it is received by an innocent third party as cash.

The rights which become vested when a check is deposited can not be prejudiced by what happens after that time between the original parties.

There is no reason why a deposit to the credit of an overdrawn account should not be fully as legal and unsuspicious as one on an account already credited with a balance. The discovery of an overdraft is the strongest possible incentive to an early deposit to make the account good.

It is better that the immediate employer and principal of an agent should suffer by the imprudence of his employe than that third parties should suffer from those acts of agents which are recognized by the public as valid, because of the confidence reposed in the principal.

Where an agent issues a commercial obligation authorized by the terms of his mandate, the legal presumption is that it was for a valuable consideration which has actually accrued to the benefit of his principal, and that, therefore, the principal is bound by it; and third parties who, acting on the presumption, receive such negotiable obligations, are protected against the equities of which they have no notice.

APPEAL from the Seventh District Court, parish of Orleans. *Collens. J. Albert Voorhies,* attorney for plaintiff and appellee. *Semmes & Mott,* for defendant and appellant.

Justices concurring: Taliaferro, Howell, Wyly and Kennard.

KENNARD, J. The Crescent City Bank, plaintiff, sues the defendant

Joseph Hernandez, upon his check on the Germania National Bank of New Orleans for the sum of two thousand five hundred and fifteen dollars and seventy-five cents, dated New Orleans, November 11, 1869, drawn by J. Hernandez, per M. F. Bonis, to the order of Huger & Bein and by them indorsed: "For deposit, Huger & Bein, per R. E. Wheeler."

The plaintiff received this check from Huger & Bein, their depositors, in regular course of business and entered it in their bank book as so much cash on the morning of November 12, 1869.

The defendant Hernandez, through his agent M. F. Bonis, had, as a matter of accommodation, given this check on the afternoon of November 11, after bank hours, to Huger & Bein in exchange for their check, dated one day ahead, to wit, November 12. This check was drawn on the Crescent City Bank, the plaintiff. Hernandez, the defendant, presented the check received by him to the Crescent City Bank on the twelfth, before his check, the one in suit, was presented to the Germania Bank for payment in the regular course of bank exchanges. The check drawn by Huger & Bein being refused payment, Hernandez immediately notified the Germania Bank not to pay his check, drawn November 11, 1869, in favor of Huger & Bein.

The court *a qua* gave judgment against Hernandez and he has appealed.

The grounds of his defense are—

*First*—That the check was drawn without authority by M. F. Bonis on the Germania National Bank at a time when he had no funds to his credit in said bank, nor had he any funds on deposit there between the drawing of the check and its presentation for payment; that said Bonis was not authorized to draw accommodation checks on banks where no funds were deposited to the credit of respondent, or checks for larger sums than the amount at the time on deposit.

*Second*—That plaintiff is not "a bona fide" holder for value; that Huger & Bein obtained possession of said check with full knowledge that Bonis was not authorized to draw said check, through fraud and false representations and without consideration; that it was deposited with plaintiff as the agent of Huger & Bein for collection.

*Third*—That when the deposit was made by Huger & Bein the Crescent City Bank well knew that the account of Huger & Bein in said bank was largely overdrawn and so continued to be up to the institution of this suit; that at the time of such deposit plaintiff paid no consideration therefor and has never given any new credit thereon, and that plaintiff was notified by M. F. Bonis prior to the time when the check sued on was presented for payment to the Germania Bank.

The authority exercised by M. F. Bonis, agent of Hernandez, in drawing the check in question must be measured by the terms of the

Crescent City Bank v. Hernandez.

procuration under which he acted. It is unusually full and contains the following clause: " Giving and granting unto him, said attorney, full power and authority for him, and in his name and behalf and to his use to manage and transact all and singular his business and affairs in this city, to open all letters of correspondence addressed to said appearer and to answer the same, to make checks and draw money out of any bank or banks wherein the same may have been deposited in the name or for account of said appearer."

The answer of defendant and the character of the evidence shows conclusively that he would not have expected a release from the payment of his check, had there been funds to meet it on deposit in the Germania Bank at the time when the check was drawn, the agent's authority to draw checks being unrestricted in the power of attorney so far as funds on deposit are concerned.

Is the fact that a sufficient amount to meet the check, was not on deposit when the check was drawn, a valid defense to its payment in the hands of a party who had no notice of the prohibition put upon the agent?

Can the default made by Huger & Bein, with reference to their check given in exchange for this, operate a release from the liabilities attaching to defendant as soon as his check was received by an innocent third party as cash ?

This check was entered in the bank book of Huger & Bein as cash. Immediately upon its entry, Huger & Bein were authorized to check against it and the evidence shows that by one o'clock on the twelfth they had exhausted their deposit including this check. The consideration given by the Crescent City Bank was then the face value of the check in cash.

The proof is that seven exchanges of checks similar to this had been previously made between these parties, a course of dealing well calculated to remove any doubts that might have been entertained by the plaintiff as to the regularity of this check.

The second ground of defense that Huger & Bein obtained their possession with full knowledge that Bonis was not authorized to draw it, if true, can not prejudice the rights of a third holder who is neither alleged nor proven to have had such knowledge.

The allegations, if proven, that the Crescent City Bank knew that the account of Huger & Bein was largely overdrawn when this check was deposited, and so continued to be up to the institution of this suit, that no new credit was given on account thereof, and that plaintiff was notified prior to the presentation of the check for payments, can not avail the defendant. Plaintiff's rights vested when the check was deposited, what happened after that time between the original parties can not prejudice those rights. We see no reason why a de-

posit to the credit of an overdrawn account is not fully as legal and unsuspicious as one to an account already credited with a balance.

The discovery of an overdraft is the strongest possible incentive to an early deposit to make the account good.

It is contended that to validate checks thus drawn when there are not funds on deposit to meet them, is to authorize an agent to use his principal's credit instead of his cash. That the agent will thereby be left without restraint and may at will ruin his principal, and the case of Baines *v.* Ewing, volume 1 Law Reports Exchequer for 1866, p. 320, is cited as sustaining this view.

In that case the agent was authorized in the name of his principal to underwrite policies against marine risks in Liverpool not exceeding £100 by any one vessel. He exceeded his authority by underwriting a policy for £150, and the court held the principal to have been released, but the reason assigned by the court destroys the analogy to this case.

The organ of the court says: "The plaintiff was not aware that the broker's authority was limited to any particular sum, but it was notorious in Liverpool that in nearly all cases there is a limit of some sort which remains undisclosed to third persons imposed on brokers by their principals."

Baron Martin, concurring, adds: "But then it is said we must hold him to have had authority because of the exigencies and course of business at Liverpool. It appears, however, that it was well known there that a limit is almost always, if not always, put to the amount for which a broker may underwrite."

Banks see fit to treat their good credit as increasing the amount of their cash on deposit, and we see no good reason why innocent third parties should be held responsible for entertaining the same confidence in a good signature.

We think this view not only consonant with sound law but essential to banks themselves and commercial interests generally. It is better that the immediate employer and principal of an agent should suffer by the imprudence of his employe than that third parties should suffer from those acts of agents, which are recognized by the public as valid, because of the confidence reposed in the principal.

The reasons assigned by the learned judge *a quo* are cogent and satisfactory. For those reasons and the reasons herein assigned the judgment is affirmed.

---

The Supreme Court having assigned among the reasons for their judgment those given by the judge *a quo*, it is deemed proper to report his decision.—REPORTER.

Crescent City Bank *v.* Joseph Hernandez, Seventh District Court,

parish of Orleans.   Collens, J.   The defendant is a stock, money and exchange broker; M. F. Bonis is defendant's principal clerk, and has also been constituted his agent by authentic act passed before S. Magner, Esq., notary public.   This power given by this act is very extensive. It gives, generally, authority to manage and transact all and singular the constituent's business in this city, and specially to make deposits and draw checks, "to sell stocks," etc., to receive and pay moneys, "to make pawns and pledges," to make, give and renew notes, "to borrow money, adjust and settle all accounts," to compromise, compound, etc.

On one or more occasions Bonis had made friendly loans of Hernandez's funds to Huger & Bein, but Hernandez, on being informed of this, expressly forbade a repetition of this favor.   Nevertheless, on the eleventh November, 1869, after bank hours, Bonis was prevailed upon to receive Huger & Bein's check on the Crescent City Bank for $2515 75, payable next day, and in exchange to give Hernandez a check on the Germania Bank for a like sum, payable immediately; at the moment Bonis drew this check he knew that, though Hernandez had an account at the Germania Bank, the balance there to his credit amounted only to a few dollars, and he relied to make up the deficiency on Huger & Bein's check on the Crescent City Bank; also, on other promises and assurances of Huger & Bein, but these expectations were not realized.   Huger & Bein deposited Hernandez's check in the Crescent City Bank as cash, and it was credited to them as cash, and therefore as customary of this right they availed themselves superabundantly and before the check drawn in favor of Harnandez was presented they had, by means of other checks, overdrawn their accounts. .

In the meantime, Bonis, for Hernandez, had made no deposit in the Germania Bank to meet the check he had drawn, so that when the plaintiff presented it for payment, it was refused and protested, and not only for want of funds, but also by express orders from Hernandez, who had become aware of the violation of his private instructions.

The question presented is whether Hernandez is liable to the Crescent City Bank on this check; he contends that the power to make checks is necessarily a limited power, that an agent having this power can bind his principal to the extent only of the amount of cash actually on deposit at the moment of drawing the check, for it is a power to draw against funds, and therefore it ceases when there are no funds, so that an agent who issues checks, when there is no deposit to meet them exceeds his power, and does not bind his principal. · Defendant's counsel argue that an assignment, or appropriation of the deposit *pro tanto*, and therefore if there is no deposit or fund there can be no assignment made by the agent so as to affect the principal.   They also

argue that a check is only a means of effecting a payment, and hence the power to make it does not give that of using the principal's credit by the issue of an indefinite number of checks on banks where no account, or no sufficient deposit is kept. They might have gone further and have asserted that the maxim that every man is limited; in every instance the agent is bound to use and apply the principal's moneys and other property only to that principal's affairs; the agent is forbidden by law from incumbering or alienating the property or expending the money, or engaging the credit of the principal for his, the agent's, own affairs or benefit, or to accommodate his own friends; any person taking an obligation from an agent as such in the transaction of business that does not concern the affairs of the principal, acquires no right of action against the principal; hence under the circumstances of this case, Huger & Bein would have no action against Hernandez on the check, not only because they had knowledge of the particular orders given to Bonis, but also because it was issued to them in a transaction which did not concern Hernandez or his business. They were parties to the contract itself that gave rise to the drawing of the check, and therefore liable to its ultimate equities.

But this suit is not one between original parties, but it is a controversy between a principal, sued by an innocent third party, on a written obligation contracted by an agent on behalf of that principal. The real question to be solved is whether the third party in such a case is affected by the abuse of power the agent has been guilty of in drawing a check, or by the equities between the principal and the drawee of the check.

There is a distinction in law between an abuse of power and an exceeding of power, committed by an agent. In the one case, the agent does some act within the descriptive terms of his mandate, some act which the mandate declares he shall have a right to do for his principal, but which he does really for his own benefit, or contrary to private instructions. These acts of abuse of power will bind the principal because they are covered by the terms of the mandate, unless the party dealing with the agent is aware of the agent's infidelity or gross sacrifice, or misuse of the principal's rights and property. Acts that exceed the power given—that is to say, those that are not of the kind or description mentioned in the mandate, are of no effect whatever against the principal; hence, if there had been no power given to Bonis in this mandate to draw checks, his having issued one would be in no manner binding on Hernandez; but there is such a power given, and though the agent may have committed an abuse of his authority, the law, in my opinion, renders the principal liable to a party innocent or ignorant of that abuse. Story on Agency, 126 et seq.

True it is, a check appropriates the amount to the holder of the

·check; but the act of drawing a check by an agent authorized so to draw, authorizes the assumption that there are really funds on deposit, which may be so appropriated, and no one dealing with the agent for a check, is bound to ·make previous inquiry at the bank, any more than if he were dealing with the principal. If such an inquiry were necessary, the very facilities which checks were invented to procure would be defeated.

It is also true that a check is a means of effecting a payment and not a means of using credit; but because it is only a means of payment, says Chancellor Kent, (vol. 4, p. 549, Note 4th Ed.) the check is the acknowledgment of a certain sum due. Justice Sutherland, in Murray *v.* Judah, 6 Cowen, 490, also says, "Every check is *prima facie* presumed to be given for value received by the drawer." Now, Bonis was vested with ample authority to contract a debt for this principal to pay his principal's debts, to acknowledge an indebtedness for his principal, and to draw a check for the purpose, and the presumption arises in favor of his act.

Is the principal released on proof that the fact does not sustain the presumption, and that an abuse of authority was really committed?

The law answers negatively, whenever the check has in its temporary circulation come through the ordinary course of business into the hands of an innocent holder for value.

The rule governing bills of exchange in this respect is also applicable to checks.

Story on promissory notes, par. 488, says of "checks," where they are made payable to a particular person only, they are not negotiable; where they are payable to order *they are negotiable* by indorsement, and where they are payable to bearer they are negotiable by mere delivery.

In these respects they have the *precise qualities* and *effects* of bills of exchange. Kent, vol. 3, page 75, 4th ed., says of a check; "It is transferable like a bill of exchange;" and Strong, on promissory notes, page 491, says: "It is a well known rule of law that a bill of exchange, or a promissory note taken after the day of payment, or, as the common phrase is, when it is overdue, subjects the holder to all the equities attaching to it, in the hands of the party from whom he receives it." But this rule does not apply to a check, for it is not treated as overdue, although it is taken by the holder some days after its date, and it is payable on demand. On the contrary, the holder, in such a case, takes it, subject to no equities, of which he had not at the time notice, etc.

To sum up, when an agent issues a commercial obligation, authorized by the terms of his mandate, the legal presumption is that it was for a valuable consideration that has actually accrued to the benefit of

4

his principal, and that, therefore, the principal is bound by it; and third parties, who, acting on the presumption, receive such negotiable obligations are protected against the equities of which they have had no notice. 10 L. R., 567; 19 A. R., 183; Louisiana Code, 2971, 2972, 2990.

Judgment for plaintiff.